**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Diane Clavette

    v.                                       Civil No. 10-cv-580-JL

Michael J. Astrue, Commissioner,
Social Security Administration

**REPORT AND RECOMMENDATION**

Pursuant to 42 U.S.C. § 405(g), Diane Clavette moves to reverse the Commissioner's decision denying her application for Social Security disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423.  The Commissioner, in turn, moves for an order affirming his decision.  For the reasons that follow, I recommend that the matter be remanded for further proceedings consistent with this report and recommendation.

**Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, if

supported by substantial evidence, shall be conclusive
. . . .

42 U.S.C. § 405(g).  However, the court "must uphold a denial of social security disability benefits unless 'the [Commissioner] has committed a legal or factual error in evaluating a particular claim.'"  Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts."  Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts."  Irlanda Ortiz v. Sec'y of HHS, 955 F.2d at 765, 769 (1st Cir. 1991)

(citations omitted).  Moreover, the court "must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."  Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988).  Finally, when determining whether a decision of the Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole."  Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## Background

The parties have submitted a Joint Statement of Material Facts, document no. 13.  That statement is part of the court's record and will be summarized here, rather than repeated in full.

Clavette was born in 1950.  She first worked in 1966, and it appears that from 1982 through March of 2008, she worked full time, in a variety of positions.  In her last job, she worked as a mental-health counselor.  Her health-insurance benefits ran out at some point in 2009.

Clavette has been diagnosed with degenerative disc disease of the cervical spine, paroxysmal atrial fibrillation, breast cancer, hepatitis C, fibromyalgia, asthma, and carpel tunnel syndrome.  Her treatment for degenerative disc disease has

included a course of nearly two dozen trigger-point injections along with a prescription for MS Contin. After her breast cancer was discovered, Clavette underwent a right partial mastectomy in April of 2008. She began chemotherapy, which was subsequently discontinued because she did not tolerate it well. She also received radiation therapy.

At her hearing before an Administrative Law Judge ("ALJ"), on May 3, 2010, Clavette testified that she was not then treating with any health-care providers, due to a lack of insurance and money. She further testified that she: (1) last saw her oncologist in March of 2010; (2) was unable to see a neurologist, as recommended by her oncologist, due to a lack of insurance and money; (3) last saw her cardiologist six months previously, and was overdue for a check-up; (4) was last treated for her hepatitis C in November of 2009; and (5) stopped receiving treatment for her fibromyalgia in November of 2009, when her insurance ran out.

Clavette applied for Social Security disability insurance benefits on August 15, 2008. Her application listed March 21, 2008, as the onset date of her disability.

The record includes a physical residual functional capacity ("RFC") assessment that state-agency consultant Joan Hobbs completed on September 12, 2008. At that time, Clavette was

4

undergoing post-mastectomy follow-up treatment for her breast

cancer.  Dr. Hobbs concluded her assessment:

> [Clavette] complains that "at times" she can not
> concentrate.  She states that this is due to fatigue
> as a result of current chemotherapy.

> ADLs: "Too weak to work."  chemotherapy.  Able to
> complete chores with rests, cook simple meals, drives,
> shops, walk 1 block, Complains of angina, fatigue.
> [Clavette is] fully credible.

> It is reasonable to expect that by 3/21/09, or within
> 12 months of [the alleged onset date], when radiation
> is complete (chemotherapy was completed on 8/15/08),
> [Clavette] should be less fatigued and again be
> capable of working.  [Clavette] should be able to work
> at the functional capacity addressed above.

Administrative Transcript (hereinafter "Tr.") 567.  Dr. Hobbs

projected a physical RFC that is generally consistent with light

work.

On June 8, 2009, at the request of Dr. Rima Downs, physical

therapist Ellen Duquette performed a functional capacity

evaluation of Clavette.  Specifically, Dr. Downs referred

Clavette to Duquette

> to answer the following questions about [Clavette's]
> current work/functional ability:

> Did Ms. Clavette provide full physical effort during
> testing?

> Is Ms. Clavette capable of performing her pre-illness
> job?  If not, what are her physical abilities?

> Are Ms. Clavette['s] subjective reports of pain and
> disability reliable?

Tr. 578.  In her summary, Duquette reported her impression that

Clavette gave "full physical effort," Tr. 573, but also noted

"some minor inconsistency to the reliability/accuracy of Ms.

Clavette's subjective reports of pain/limitation," id.  Duquette

elaborated:

> Overall inconsistencies were considered minor, with
> her subjective reports generally matching well with
> distraction-based clinical observations.  In
> describing such findings, this evaluator is by no
> means implying intent.  Rather, it is simply stated
> that Ms. Clavette can do more at times than she
> currently states or perceives.  While her subjective
> reports should not be disregarded, they should be
> considered within the context of such [reliability of
> pain and disability reports] findings.

Id.  Duquette concluded the summary of her findings in the

following way:

> As defined by the Dictionary of Occupational Titles
> (DOT), her current job as a mental health counselor is
> considered a sedentary physical demand level.  Within
> the scope of a 4-hour [functional capacity
> evaluation], the results of this assessment indicate
> Ms. Clavette is physically capable of performing her
> current job.  However, it is apparent that her current
> level of emotional stress is preventing her from being
> able to attend to tasks.  This would significantly
> impact her ability to perform her job as a counselor.
> It is anticipated she could gradually return to work
> if her emotional issues are addressed and pain is
> controlled more effectively.

Tr. 574 (emphasis added).  Finally, Duquette recommended: (1)

psychological counseling; (2) an exercise/aquatic therapy

program, which, in Duquette's view, might "provide relief for

6

physical pain and emotional stress," id.; and (3) "[a] gradual

return to part time work," id.

    After conducting a hearing on Clavette's claim, the ALJ

issued a decision that includes the following findings of fact

and conclusions of law:

> 3. The claimant has the following severe impairments:
> degenerative disc disease of the cervical spine,
> paroxysmal atrial fibrillation, and status post
> adenocarcinoma of the right breast, no recurrence (20
> CFR 404.1520(c)).
>
> . . . .
>
> 4. The claimant does not have an impairment or
> combination of impairments that meets or medically
> equals one of the listed impairments in 20 CFR Part
> 404, Subpart P, Appendix 1 (20 CFR 404.1520(d),
> 404.1525 and 404.1526).
>
> . . . .
>
> 5. After careful consideration of the entire record, I
> find that the claimant has the residual functional
> capacity to perform light work as defined in 20 CFR
> 404.1567(b) except she may stand or walk for four
> hours in an eight-hour day; she may sit for six hours
> in an eight-hour day; she may engage in unlimited use
> of her hands and feet to operate controls; she may
> push or pull; she may occasionally climb, reach,
> crouch, crawl, stoop, kneel, or bend; and she must
> avoid concentrated exposure to respiratory irritants.
>
> . . . .
>
> 6. The claimant is capable of performing past relevant
> work as a mental health counselor (DOT 195.107-018).
> This work does not require the performance of work-
> related activities precluded by the claimant's
> residual functional capacity (20 CFR 404.1565).

Tr. 18, 19-20, 22.  The ALJ also noted that Clavette suffers
from hepatitis C, fibromyalgia, and asthma, but deemed each of
those conditions non-severe.  Finally, the ALJ acknowledged that
"the record documents several occasions where [Clavette] briefly
alleged depression or anxiety," Tr. 19, and that Duquette "noted
that [Clavette]'s emotional stress inhibits her ability to
attend to tasks," id., but concluded that neither depression nor
anxiety was a medically determinable impairment "because the
record documents no mental health treatment," id.

## Discussion

According to Clavette, the ALJ's decision should be
reversed, and the case remanded, because the ALJ: (1) erred in
assessing both her RFC and her credibility; and (2) failed to
adequately develop the administrative record.  The Commissioner
disagrees, categorically.  Clavette's first argument is
persuasive, and dispositive.

### A. The Legal Framework

To be eligible for disability insurance benefits, a person
must: (1) be insured for such benefits; (2) not have reached
retirement age; (3) have filed an application; and (4) be under
a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  The only question
in this case is whether Clavette was under a disability.

8

For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  Moreover,

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled for the purpose of determining eligibility for disability insurance benefits, an ALJ is required to employ a five-step process.  See 20 C.F.R. § 404.1520.

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the

9

> conditions for one of the "listed" impairments in the
> Social Security regulations, then the application is
> granted; 4) if the [claimant's] "residual functional
> capacity" is such that he or she can still perform
> past relevant work, then the application is denied; 5)
> if the [claimant], given his or her residual
> functional capacity, education, work experience, and
> age, is unable to do any other work, the application
> is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20

C.F.R. § 416.920, which outlines the same five-step process as

the one prescribed in 20 C.F.R. § 404.1520).

Clavette bears the burden of proving that she is disabled.

See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  She must do so

by a preponderance of the evidence.  See Mandziej v. Chater, 944

F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530

F. Supp. 808, 810-11) (D. Mass. 1982)).  Finally, when

> assessing a disability claim, the [Commissioner]
> considers objective and subjective factors, including:
> (1) objective medical facts; (2) [the claimant]'s
> subjective claims of pain and disability as supported
> by the testimony of the [claimant] or other witness;
> and (3) the [claimant]'s educational background, age,
> and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797

F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690

F.2d 5, 6 (1st Cir. 1982)).

B. Clavette's Arguments

As noted, Clavette argues that the ALJ made faulty

assessments of both her RFC and her credibility and, in

10

addition, failed to develop the record adequately.  While

Clavette addresses the ALJ's RFC and credibility assessments in

a single argument, presumably because she believes both

assessments to have been infected by the same errors, the court

will consider each issue separately.

### 1. RFC Assessment

With regard to the RFC assessment, Clavette argues that the

ALJ erred by: (1) mischaracterizing Duquette's functional

capacity evaluation; and (2) failing to adequately consider her

activities of daily living.

In his decision, the ALJ based his RFC determination, in

part, on the following assessment of the opinion evidence:

> As for the opinion evidence, I give the most weight to
> State examiner Joan Hobbs, who found that the claimant
> is capable of performing light work so long as she
> avoids concentrated exposure to pulmonary irritants
> such as fumes, odors, dusts, and gasses.
> Consistently, I give significant weight to the opinion
> of Ellen Duquette, PT, who found that the claimant is
> capable of performing her past relevant work as a
> mental health counselor, due to her extensive physical
> consultation with the claimant as established above.
> There is no opinion proffered to the contrary.

Tr. 21 (citations to the record omitted).

The ALJ's decision substantially misinterprets the opinion

evidence.  Dr. Hobbs did <u>not</u> say that, at the time of her

assessment, Clavette was capable of light work.  Rather, she

found "fully credible" Clavette's statement that she was "[t]oo

weak to work," Tr. 567, and opined that, at some point before
March 21, 2009, Clavette would "again be capable of working,"
id.  Similarly, Duquette did not say that, at the time of her
evaluation, Clavette was capable of working as a mental-health
counselor.  Rather, more than twelve months after Clavette's
alleged onset date, Duquette opined that while Clavette had the
physical capacity for sedentary work, "she could gradually
return to work if her emotional issues are addressed and pain is
controlled more effectively."  Tr. 574 (emphasis added).
Moreover, Duquette specifically recommended "[a] gradual return
to part time work."  Id. (emphasis added).  Accordingly, it is
inaccurate to say that either Dr. Hobbs or Duquette opined that
Clavette had the present capacity to perform her past relevant
work at the time of their evaluations.[1]  The only reasonable
interpretation of those opinions is that both Dr. Hobbs and
Duquette found Clavette to be incapable of working at the time

---

[1] Moreover, the court is particularly troubled by the
following aspect of the ALJ's characterization of the record.
At one point, he stated, accurately, that "Ms. Duquette found
that the claimant is physically capable of performing her
current job as a mental health counselor," Tr. 21 (emphasis
added).  Three paragraphs later, however, the ALJ substantially
recast that finding, stating that Duquette "found that the
claimant is capable of performing her past relevant work as a
mental health counselor," id.  Duquette found no such thing.  To
the contrary, she stated, quite clearly, that Clavette would be
able to gradually return to her work as a mental health
counselor, on a part-time basis, if she were able to address her
emotional issues and control her pain more effectively.

they wrote their opinions.  Consequently, the record includes <u>no</u>
opinion evidence that Clavette had the capacity to work as a
mental-health counselor, or at any other job, at the time the
opinion was rendered.

Because the opinions of Dr. Hobbs and Duquette are the only
affirmative evidence the ALJ cites as supporting his RFC
assessment – the rest of his RFC discussion is devoted to his
negative credibility assessment – the court concludes that the
ALJ's RFC assessment is not supported by substantial evidence.
Moreover, given Clavette's alleged onset date in March of 2008,
Dr. Hobbs's opinion that Clavette was not capable of working in
September of 2008, and Duquette's similar conclusion in June of
2009, it is difficult to see how Clavette is not entitled to at
least a brief period of disability.  In any event, because the
ALJ's RFC assessment is not supported by substantial evidence,
this case must be remanded.

### 2. Credibility Assessment

The ALJ's erroneous RFC assessment, on its own, merits a
remand.  Thus, it is not technically necessary to address the
ALJ's credibility assessment.  However, because the court shares
many of Clavette's concerns with that aspect of the decision,
the court takes this opportunity to point out the principal
problems with the ALJ's credibility assessment.  Clavette argues

that the ALJ erred by: (1) using an incorrect standard to evaluate her credibility; (2) failing to mention her twenty-seven-year work history; (3) failing to adequately consider her activities of daily living; and (4) failing to consider her chronic cluster of symptoms.

According to Social Security Ruling ("SSR") 96-7p, "an individual's statement(s) about his or her symptoms is not in itself enough to establish the existence of a physical or mental impairment or that the individual is disabled." 1996 WL 374186, at *2. "A symptom is an individual's own description of his or her physical or mental impairment(s)." Id. When "symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness," id., are alleged, SSR 96-7p prescribes the following evaluation process:

> * First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s) – i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques – that could reasonably be expected to produce the individual's pain or other symptoms. . . . If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

> * Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has

14

been shown, the adjudicator must evaluate the
intensity, persistence, and limiting effects of the
individual's symptoms to determine the extent to which
the symptoms limit the individual's ability to do
basic work activities.  For this purpose, whenever the
individual's statements about the intensity,
persistence, or functionally limiting effects of pain
or other symptoms are not substantiated by objective
medical evidence, the adjudicator must make a finding
on the credibility of the individual's statements
based on a consideration of the entire case record.

Id.  In addition:

When additional information is needed to assess the
credibility of the individual's statements about
symptoms and their effects, the adjudicator must make
every reasonable effort to obtain available
information that could shed light on the credibility
of the individual's statements.  In recognition of the
fact that an individual's symptoms can sometimes
suggest a greater level of severity of impairment than
can be shown by the objective medical evidence alone,
20 CFR 404.1529(c) and 416.929(c) describe the kinds
of evidence, including the factors below, that the
adjudicator must consider in addition to the objective
medical evidence when assessing the credibility of an
individual's statements:

    1. The individual's daily activities;

    2. The location, duration, frequency, and
    intensity of the individual's pain or other
    symptoms;

    3. Factors that precipitate and aggravate the
    symptoms;

    4. The type, dosage, effectiveness, and side
    effects of any medication the individual takes or
    has taken to alleviate pain or other symptoms;

    5. Treatment, other than medication, the
    individual receives or has received for relief of
    pain or other symptoms;

> 6. Any measures other than treatment the
> individual uses or has used to relieve pain or
> other symptoms (e.g., lying flat on his or her
> back, standing for 15 to 20 minutes every hour,
> or sleeping on a board); and
>
> 7. Any other factors concerning the individual's
> functional limitations and restrictions due to
> pain or other symptoms.

Id. at *3.  In this circuit, the seven considerations listed
above are commonly referred to as the Avery factors.

SSR 96-7p outlines a specific staged inquiry that consists
of the following questions, in the following order: (1) does the
claimant have an underlying impairment that could produce the
symptoms he or she claims?; (2) if so, are the claimant's
statements about his or her symptoms substantiated by objective
medical evidence?; and (3) if not, are the claimant's statements
about those symptoms credible?  See Baker v. Astrue, Civ. No.
08-11812-RGS, 2010 WL 3191452, at *8 (D. Mass. Aug. 11, 2010)
("If after evaluating the objective findings, the ALJ determines
that the claimant's reports of symptoms are significantly
greater than what could be reasonably anticipated from the
objective evidence, the ALJ must then consider other relevant
information."); Callie v. Comm'r of Soc. Sec., Civ. No. 09-1305,
2010 WL 1424725, at *3) (D.P.R. Apr. 6, 2010) (explaining that
"before weigh[ing] the credibility of a claimant's statements

16

about pain . . . [the] ALJ must first find a lack of support in the objective medical evidence for the allegations of pain").

Finally, an ALJ's "determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p, 1996 WL 374186, at *2 (emphasis added).  Stated a different way, "[i]t is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'"  Id.

In her Function Report, Clavette indicated that her ability to perform daily activities was limited by stiffness, pain, nausea and, at times, cardiac arrhythmia.  See Tr. 116.  At her hearing, she mentioned "a lot of neurological symptoms" including neuropathy[2] in her feet and carpal tunnel syndrome, Tr. 31, strange sensations, constant nausea, and chronic pain.  In his decision, the ALJ identified multiple symptoms, including: (1) stiffness of movement; (2) "frequent short-lived episodes of

---

[2] Neuropathy is "a disease involving the cranial nerves or the peripheral or autonomic nervous system."  Stedman's Medical Dictionary 1313 (28th ed. 2006).

rapid atrial fibrillation and atrial flutter," Tr. 20; (3) "increased bouts of dizziness status post radiation," id., occurring "four to seven days per week, from ten minutes to several hours" id., along with "lightheadedness, poor sleep, tightness in the neck, paresthesia,[3] and mild waxing and waning neuropathy, more pronounced in the morning,"[4] id.; (4) increased peripheral neuropathy and a "jumping leg" sensation, Tr. 21; (5) pain; and (6) nausea.  After describing Clavette's symptoms, the ALJ continued:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

Tr. 21.

The ALJ's discussion of Clavette's symptoms is not organized symptom by symptom but, rather, consists of three paragraphs, each devoted to one of Clavette's three severe

---

[3] Paresthesia is "[a] spontaneous abnormal usually nonpainful sensation (e.g., burning, pricking) [that] may be due to lesions of both the central and peripheral nervous systems." Stedmans, supra, at 1425.

[4] According to the ALJ, Clavette reported those symptoms in January of 2009 and also reported that they subsided in April of that year.

impairments.  For that reason, many of Clavette's symptoms seem
to have fallen through the cracks.

In any event, with regard to both Clavette's degenerative
disc disease and her breast cancer, the ALJ stated: "I find that
the objective medical evidence of record does not match her
alleged limitations."  Tr. 21.  Relying on a lack of objective
medical evidence as the sole support for a negative credibility
determination is a legal error.  See Guziewicz v. Astrue, No.
10-cv-310-SM, 2011 WL 128957, at *6 (D.N.H. Jan. 14, 2011).  The
lack of objective medical evidence supporting a claimant's
statements about her symptoms is what triggers an ALJ's
obligation to conduct a credibility assessment, not evidence
that the claimant's statements lack credibility.  See id.

Here, the ALJ's discussion of credibility includes little
more than references to the purported mismatch between objective
medical evidence and Clavette's statements.

Reference to the objective medical evidence is all that the
ALJ offered with respect to Clavette's atrial fibrillation and
most of what he offered with respect to her degenerative disc
disease.  To be fair, in his discussion of degenerative disc
disease, the ALJ also relied upon Duquette's functional capacity
evaluation which, strictly speaking, is not objective medical
evidence.  But, as noted above, while Duquette did find Clavette

capable of meeting the physical demands of sedentary work, she did not opine that Clavette had the present capacity to perform her job as a mental-health counselor.  Rather, she recommended a gradual return to part-time work, in conjunction with various steps to address Clavette's physical pain and emotional distress.  The ALJ also mentioned the "minor inconsistency to the reliability of the claimant's subjective reports of pain."[5] Tr. 21.  Even so, in light of Duquette's findings and recommendations, Duquette's opinion cannot reasonably be read as undercutting the credibility of Clavette's statements about her symptoms; Duquette found minor inconsistencies, but also determined that Clavette needed relief from both physical pain and emotional stress as a precondition to making a gradual return to part-time work.

With respect to Clavette's breast cancer, and her treatment for that condition, the ALJ relied on a mismatch between the objective medical records and Clavette's alleged limitations and also cited reports to her oncologist that "she had started back on her old exercise bike and was 'feeling like her old self,'" Tr. 21, and that "her right breast was feeling 'much better,'"

---

[5] As the ALJ himself acknowledged in his decision, Clavette identified numerous symptoms in addition to pain.

id., along with a report to her cardiologist that "she was 'generally feeling well,'" id.

The ALJ's report of Clavette's statement that she was feeling "like her old self" is drawn from the following paragraph in a medical note:

> She feels that she is still not doing real well and has poor energy, sleeps poorly at night, is nauseated at times, and also is having hot flashes that she has never had before. The nausea is slowly improving and she cannot pinpoint any new medications that would be the cause. She has, however, started back on the exercise bike this week. She is napping 4 or 5 times per week for about 1 hour and really feels like her good old self, just 4 hours a day otherwise extremely fatigued. She is having occasional palpitations which started during her chemo, and still is aware of lightheadedness, loss of energy, and irregular heartbeat at times.

Tr. 625. Whatever else they may be, the five words the ALJ quoted from the foregoing paragraph and his reference to Clavette's exercise bike are not substantial evidence that Clavette's statements about her symptoms lack credibility. The quotation about Clavette's right breast feeling much better is drawn from the following context:

> She is also feeling much better with resolution of the discomfort in her treated right breast. . . .
>
> Her main issue remains to be peripheral neuropathy, which has progressed. She now has some jumping legs. It is thought that it might be some underlying neurologic condition that is not related to the chemotherapy. She is going to see a new neurologist in the near future.

Tr. 656.  While the medical note quoted above does indicate a
resolution of Clavette's breast pain, it also describes other
symptoms, said to be progressing, that the ALJ reported but
never actually addressed.  While it is certainly the role of the
ALJ to resolve conflicts in the evidence, see Irlanda Ortiz, 955
F.2d at 769, his selective quotation from the medical records
casts a shadow on the reliability of his factfinding.

Beyond that, outside of the ALJ's reference to Clavette's
exercise bike, his decision says nothing about any of the Avery
factors.  "Detailed written discussion of the Avery factors is
desirable."  Lalime v. Astrue, No. 08-cv-196-PB, 2009 WL 995575,
at *9 (D.N.H. Apr. 14, 2009) (citing Frustaglia v. Sec'y of
Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987)).
But, an ALJ need not "slavishly discuss each of the factors
listed in SSR 96-7p."  Ingle v. Astrue, No. 10-cv-103-SM, 2010
WL 5070766, at *8 (D.N.H. Nov. 8, 2010) (citing Crocker v.
Astrue, No. 07-220-P-S, 2008 WL 2775980, at *4 (D. Me. June 30,
2008)).  Moreover, an ALJ whose decision does not properly
address the Avery factors may still comply with Avery "if he
examines the relevant factors at the administrative hearing."
Lalime, 2009 WL 995575, at *9 (citing Graham v. Barnhart, No.
02-cv-243-PB, 2006 WL 1236837, at *8 (D.N.H. May 9, 2006);

Braley v. Barnhart, No. 04-176-B-W, 2005 WL 1353371, at *8 (D.
Me. June 7, 2005)).

Here, the ALJ asked Clavette a single question directed
toward the issues covered by the Avery factors: "Tell me what
you do in a typical day." Tr. 34. While the ALJ's decision
demonstrates his awareness of the range of Clavette's alleged
symptoms, he did not ask about any of them specifically, did not
ask about their location, duration, frequency or intensity, did
not ask about factors that precipitate or aggravate them, and
did not ask about Clavette's attempts to alleviate her symptoms
through medication, treatment other than medication,[6] or measures
other than treatment. The ALJ's single question about daily
activities, which was not even framed in terms of limitations
imposed by Clavette's symptoms, is not an examination of the
Avery factors sufficient to make up for the inadequate
discussion of those factors in the ALJ's decision.

The ALJ's failure to examine the Avery factors at
Clavette's hearing is especially puzzling in light of his
reliance on Duquette's opinion, to which he gave "significant
weight." Tr. 21. Duquette opined that Clavette would be able

---

[6] The ALJ did ask Clavette which doctors she was then
seeing, and specifically asked when she was last treated for
atrial fibrillation, hepatitis C, breast cancer, and
fibromyalgia, but he did not delve into the effect(s) of
treatment on her symptoms.

to return to her job as a mental-health counselor, albeit on a
part-time basis, if she were able to address her emotional
issues and control her pain more effectively.  Yet, the ALJ
never asked Clavette whether she had been able to address her
emotional issues or effectively control her pain.  It is
difficult to imagine how a line of <u>Avery</u> inquiry could have been
set up any more clearly than it was in this case.

### 3. Development of the Record

Clavette also argues that the ALJ erred by failing to
adequately develop the record.  Because Clavette is entitled to
a remand, for the reasons discussed above, there is no need to
determine whether the insufficiency of the record warrants a
remand.  However, the court notes that if there are indeed
existing medical records that were not included in the
administrative record, any such omissions can be corrected on
remand.  Finally, given that the ALJ determined that Clavette's
depression and anxiety were not medically determinable because
Clavette had not received mental-health treatment, and given
Clavette's testimony about her inability to afford medical
treatment, the Commissioner would be well advised to give
serious consideration to obtaining a consultative examination.
As the record currently stands, this may well be a case in which
"the evidence as a whole, both medical and nonmedical, is not

sufficient to support a decision."  20 C.F.R. § 404.1519a(2)(b).
There is no opinion in the record, medical or otherwise, stating
that, at the time the opinion was rendered, Clavette had the
capacity to work.  Both Dr. Hobbs and Duquette offered
prospective opinions, but because the ALJ failed to recognize
them as such, he made no inquiry into whether the assumptions on
which they were based ever came to pass.  Determining whether
Clavette's fatigue, emotional issues, and pain have ever
satisfactorily resolved could well require medical evidence
beyond what already exists.

## Conclusion

For the reasons described above, I recommend that: (1) the
Commissioner's motion for an order affirming his decision,
document no. 14, be denied; and (2) Clavette's motion to reverse
the decision of the commissioner, document no. 10, be granted to
the extent that the case is remanded to the Commissioner for
further proceedings, pursuant to sentence four of 42 U.S.C. §
405(g).  The court notes that Clavette also requests an order
that: (1) remands her case to a different ALJ; and (2) requires
a new hearing within ninety days, or makes an award of interim
benefits.  Because Clavette identifies no legal authority
entitling her to the additional relief she seeks, my
recommendation is limited to an ordinary remand.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  <u>See</u> Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  <u>See</u> <u>United States v. De Jesús-Viera</u>, 655 F.3d 52, 57 (1st Cir. 2011), <u>cert. denied</u>, ___ U.S. ___, 2010 WL 33578 (Jan. 9, 2012) (citing <u>United States v. Lugo Guerrero</u>, 524 F.3d 5, 14 (1st Cir. 2008)); <u>Sch. Union No. 37 v. United Nat'l Ins. Co.</u>, 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge

February 7, 2012

cc:  Raymond J. Kelly, Esq.
     T. David Plourde, Esq.